[Cite as *State v. Howard*, 2013-Ohio-2884.]

**[Please see vacated opinion at 2013-Ohio-1972.]**

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | *NUNC PRO TUNC* |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ERICK MYDELL HOWARD | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012CA00061 |

This matter came before the Court upon appellants' motions for reconsideration pursuant to App.R. 26(A) filed May 23, 2013.

In the case at bar, this Court vacated Howard's sentences for two reasons. The Court unanimously agreed to remand the case for failure to merge allied offenses. (Farmer, J. dissenting, "I would only remand for resentencing on allied offenses.", ¶141). The majority further agreed that there exists an appearance Howard was penalized because he chose to exercise his right to a jury trial rather than plead guilty. *Howard*, 2013-Ohio-1972, ¶85; (Hoffman, J. Concurring in part)("I further concur in Judge Gwin's decision to vacate and reconsider Appellant's sentence. I do so based solely on his conclusion there exists an appearance Appellant was penalized because he chose to exercise his right to a jury trial rather than plead guilty"), ¶137.

Upon review, we find the Motion is well taken in part, and denied in part.

The appellee correctly notes that the Memorandum-Opinion filed May 13, 2013 at ¶87 incorrectly states that the trial court imposed appellant's conviction for rape concurrently, when in fact the sentence was imposed consecutively. Further, the Court left out the citation to *State v. Morris,* 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637, at ¶83.

Accordingly, this Court corrects the May 13, 2014 Opinion at ¶87 to delete "However, the trial court did not increase Howard's sentence because of this difference, choosing instead to run the time for the rape concurrent with the sentence for the aggravated burglary and aggravated robbery. In spite of the time for the rape charge running concurrently," The opinion if further corrected to include the missing citation at ¶83.

Appellee's Motion for Reconsideration filed May 23, 2013 is denied in all other respects in its entirety.

Therefore, this nunc pro tunc judgment entry along with a nunc pro tunc opinion and judgment entry shall be filed in this matter to correct the errors.

IT IS SO ORDERED.

_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012CA00061 |
| ERICK MYDELL HOWARD | : |  |
|  | : |  |
| Defendant-Appellant | : | *NUNC PRO TUNC*  O P I N I O N |


CHARACTER OF PROCEEDING:         Criminal appeal from the Stark County
                                 Court of Common Pleas, Case No.
                                 2011CR1470B

JUDGMENT:                        Affirmed in part; reversed in part and
                                 remanded

DATE OF JUDGMENT ENTRY:

APPEARANCES:

For Plaintiff-Appellee            For Defendant-Appellant

JOHN FERRERO                      DONALD P. WILEY
BY: CHRYSSA N. HARTNETT           ANTHONY BROWN
Stark County Prosecutor's Office  DANIEL FUNK
110 Central Plaza South           MELISSA DAY
Suite 510                         Baker, Dublikar, Beck, Wiley & Mathews
Canton, OH  44702-1413            400 South Main Street

North Canton, OH  44720

*Gwin, P.J.*

**{¶1}** Appellant Erick Mydell Howard ["Howard"] appeals his convictions and sentences on aggravated burglary, aggravated robbery, rape, and kidnapping, together with the attendant firearm specifications. Plaintiff-appellee is the State of Ohio.

### Facts and Procedural History

**{¶2}** Brian McNemar and Ava Gabriele were known to have cash readily available, as McNemar was a drug dealer who kept a safe in his basement. During the night of August 19, 2012, two armed masked intruders entered into the bedroom of the home where the couple was sleeping. McNemar and Gabriele described the two attackers as black males wearing jeans and long sleeves with their faces covered with masks. Entry was made by duct taping a basement window and breaking the glass with the butt of one of the guns. A neighbor saw this activity and called the police shortly after 3:00 a.m.

**{¶3}** The intruders took the cell phones of the couple from a nightstand. The larger of the intruders was using one of the cell phones for a light source. The smaller of the two intruders used duct tape to bind the hands and feet of McNemar; the larger intruder used the duct tape to bind Gabriele in a similar manner. Duct tape was placed across McNemar and Gabriele's mouths to prevent them from screaming. The intruders demanded the combination to the safe. McNemar told the pair that there was nothing in the safe. The smaller of the intruders asked, "Where is the cash." McNemar motioned to some envelopes on the nightstand, which contained $1,500.00 in cash. The smaller intruder began looking around the bedroom for other valuables.

{¶4} The larger of the two intruders told Gabriele, "let me see those titties again." McNemar, who was able to loosen the duct tape on his mouth slightly, told Gabriele to "let him." [3T. at 459]. McNemar heard the intruder say, "Those are some nice tits."

{¶5} The larger intruder removed the covers saying, "Let me see that pussy." He then tells Gabriele to spread her legs. She cannot because her legs had been duct taped together. The larger intruder grabbed Gabriele's ankles and lifted her legs into the air. Gabriele testified that she then felt the tip of something being inserted into her vagina. The duct tape fell off Gabriele's mouth and she began to scream. McNemar, who by this time had been able to free his hands, lunged at the assailant. The smaller assailant restrained McNemar by shoving the pistol into McNemar's eye. The couple was then restrained with more duct tape. After regaining control, the intruders proceeded to search for more money. The pair hear the smaller intruder yell, "Come on Steve let's go." The intruders left the residence sometime around 3:47 a.m.

{¶6} Once the police arrived, Gabriele was taken to the hospital where a rape kit was performed. A maroon sweatshirt and a pair of gloves were found in the side yard of the complex. A contact lens thought to belong to one of the intruders was discovered in the couple's bed.

{¶7} Neither victim was able to identify their attackers. Initially, Gabriele and McNemar informed the police that both of the intruders were African-American. Gabriele also informed the S.A.N.E. nurse while at the hospital the one intruder had referred to the other intruder as "Steve." McNemar informed the police that he overheard one of the intruders say the name "Nicole[1]."

---

[1] It was later learned that this reference was to Michael Taylor's girlfriend.

{¶8} Michael Coy, a co-worker and friend of McNemar read about the break-in in a local community newspaper. Coy related that he thought he had called McNemar that night to arrange to buy marijuana from him. When McNemar told him he did not have any, Coy called Howard. Coy claimed Howard sounded suspicious because he told Coy that he, Howard "does not do that anymore, but he may have some later on." Although unable to recall the description at trial, Coy felt the description of the suspect in the break-in of his friend's home that was in the newspaper matched Howard. Coy told McNemar that he thought Howard was involved in the incident.

{¶9} McNemar shared Coy's suspicion with Gabriele, who in turn relayed the information to her mother. Because Howard had been a standout athlete in high school, Gabriele asked her mother to search the internet for "anything that would help us identify him." Jane Gabriele was able to locate an interview of Howard conducted three-years ago on http://www.youtube.com. Jane Gabriele played the audio portion of the interview with Howard from her computer speaker to her telephone. The daughter listened to the feed on her cell phone. Ava Gabriele recognized the voice as the larger of the two intruders and the one who had physically assaulted her.

{¶10} Rumors began to circulate about the identity of the intruders. Michael Taylor was telling people at a local park about his involvement in the crime. On August 29, 2011, Gabriele and McNemar told the police about the internet video and their belief that Howard had been one of the intruders.

{¶11} The police questioned Taylor on September 1, 2011. Taylor denied having any knowledge of the incident. He was questioned by the police a second time on September 5, 2011. Taylor continued to deny any knowledge of the incident.

{¶12} However, Shane Riggins informed the police that Taylor had told him the perpetrators had gone to a local Wal-Mart to purchase duct tape and gloves on the night of the incident. The police obtained the video surveillance tapes from inside the store as well as video tapes of the parking lot. The police also obtained copies of receipts for duct tape, stealth gloves and gum. Detective Randy Manse of the North Canton Police Department recognized Howard and Seth Obermiller as the individuals who had purchased the duct tape and the gloves. He testified that the pair entered the store separately. Howard purchased the gloves; Obermiller purchased the duct tape. The video showed Howard and Obermiller leaving the store and getting into Michael Taylor's car.

{¶13} The police questioned Howard on September 5, 2011. He told the police that he was at Dogwood Park on the night of the incident. Howard told the police that he was mad because he had bought some "acid" and believed that it was fake. Howard admitted that he "hooked up" with Michael Taylor. He further admitted that he knew McNemar. He denied any knowledge of the break-in.

{¶14} On September 7, 2011, police obtained DNA samples from Taylor and Howard. Later that day, Taylor appeared at the police station of his own accord. Taylor told the police about Obermiller's involvement in the planning of the break-in and its subsequent execution; however, Taylor did not implicate Howard. Taylor told the detective that the third person was "Ghost" a person he had never met before.

{¶15} Obermiller had opted to go to Pennsylvania to let things cool down. While driving in Pennsylvania, Obermiller was pulled over with the gun and some marijuana in

the car, and was arrested. After this arrest, he returned to North Canton, where he was contacted by the police about a week after the break-in.

{¶16} Obermiller told the police during the night of August 19, 2012, he and Howard were partying in Cuyahoga Falls, smoking marijuana and taking acid. Believing the acid to be fake, the two returned to North Canton and talked about robbing the person who sold them the acid. Obermiller drove to his home to pick up two pairs of gloves, two ski masks, and a gun (a .9 mm Llama). Howard then made a phone call to Jamie Hawkins about getting another gun from him. Obermiller drove to Hawkins' home next. Howard told Hawkins that he needed a gun because he had been robbed. Hawkins told Howard that he could borrow his .45 caliber handgun, but he had to return it by 4:00 a.m. Hawkins told Howard that he would hold Howard's cell phone as collateral.

{¶17} Howard and Obermiller then picked up Taylor, who had just got off work. Taylor suggested to his two friends that they rob McNemar and Gabriele. Taylor was friends with both McNemar and Gabriele, and had bought and smoked pot from and with them.

{¶18} The trio later went to a Wal-Mart to make purchases in furtherance of their plan. The trio then went to the McNemar-Gabriele residence in North Canton. After parking their vehicle, Taylor remained outside as a lookout. All three went to the backyard where they duct taped a basement window and broke it with the butt of one of the guns. Obermiller and Howard then went into the basement with their ski masks and gloves, while Taylor opted to stay outside and serve as a lookout. A neighbor saw this activity and called the police shortly after 3:00 a.m. Taylor called Obermiller to alert him

that the police had arrived. Not wanting to be caught by the police, Taylor left his gloves and hoodie at his hiding spot and left the area. Taylor's cell phone was also dying, so he went to a nearby Laundromat to recharge it. Howard and Obermiller remained inside the residence as the police searched the backyard area, and then proceeded upstairs to look for the occupants once the police flashlights had left.

{¶19} After robbing the couple, Howard and Obermiller returned to the car. Taylor was not there. The pair proceeded back to Hawkins to return the gun and retrieve Howard's cell phone. Hawkins had in fact texted Obermiller close to 4:00 a.m. inquiring about the gun. The two then got rid of their gloves and ski masks. The two also divided the money. While doing this, Obermiller got a call from Taylor who told him he was at the Laundromat. The two picked Taylor up there and dropped him off near his home.

{¶20} Obermiller ran into Taylor later that day, who told him about telling people at a park what they had done. Obermiller told Taylor to shut up, and opted to go to Pennsylvania until things had cooled down. Obermiller turned the gun over to the North Canton Police. Obermiller admitted that the contact lens found in Gabriele and McNemar's bed belonged to him. DNA tests confirmed that it was Obermiller's.

{¶21} In exchange for testifying at Howard's trial, Obermiller received an aggregate sentence of 7 years upon his pleas to aggravated robbery with a gun specification, aggravated burglary with a gun specification and kidnapping. Taylor pled guilty to complicity to attempted burglary and received a community control sanction.

{¶22} Before trial began, Howard attempted to fire his retained attorney and retain new paid counsel. Howard explained to the court that he believed he was innocent, but that his lawyer did not believe him and that they had a "major conflict of

interest." His attorney agreed that the attorney-client relationship had eroded, and asked to not be "forced" to defend Howard. The court stated that it did not believe there was a complete breakdown in communication nor an irreconcilable conflict between Howard and his counsel, and denied the request to hire new counsel.

{¶23} At the conclusion of trial, the jury found Howard guilty as charged in the indictment. The trial court, upon accepting the jury's verdict and convicting Howard thereon, deferred sentencing to permit motions to be filed. Howard raised a challenge to his convictions and potential sentences based on the offenses being allied offenses of similar import. The trial court, after review of these motions and responses, overruled Howard's R.C. 2941.25 motion and proceeded with sentencing. The trial court imposed an 8-year prison term on all four offenses, as well as the mandatory 3-year prison term for the four firearm specifications. Three of the 8-year prison terms were imposed consecutively; with the 8-year term for the kidnapping conviction imposed concurrently. The court merged two of the firearm specifications into the remaining two firearm specifications, resulting in two consecutive 3-year prison terms imposed consecutively with their underlying offenses. As a result, the trial court sentenced Howard to an aggregate prison term of 30 years.

### Assignments of Error

{¶24} Howard raises five assignments of error:

{¶25} "I. THE TRIAL COURT DENIED DEFENDANT HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO COUNSEL OF CHOICE BY THE COURT'S ARBITRARY REFUSAL TO PERMIT HIM TO BE REPRESENTED BY THE COUNSEL OF HIS CHOICE.

**{¶26}** "II. THE TRIAL COURT ERRED BY PUNISHING THE DEFENDANT FOR EXECUTING HIS CONSTITUTIONAL RIGHT TO DEFEND HIMSELF AT TRIAL BY SENTENCING HIM TO CONSECUTIVE TERMS WHICH TOTALED MORE THAN FOUR TIMES THE SENTENCE IMPOSED ON HIS CODEFENDANTS, TWO AND A HALF TIMES MORE THAN THE MAXIMUM SENTENCE ON THE MOST SERIOUS OFFENSE AND GREATER THAN THAT GIVEN TO INDIVIDUALS CONVICTED OF MURDER IN THIS COUNTY.

**{¶27}** "III. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

**{¶28}** "IV. THE TRIAL COURT ERRED IN FINDING THE APPELLANT A SEXUAL PREDATOR.

**{¶29}** "V. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

**{¶30}** In his first assignment of error, Howard alleges that the trial court deprived him of an opportunity to retain counsel of his choice.

**{¶31}** The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. This right "guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624-25, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). "A criminal defendant who desires and is financially able to retain his own

counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Ibid.* (quoting *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932)).

**{¶32}** The Supreme Court has held "that erroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error."'" *United States v. Gonzalez–Lopez,* 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (quoting *Sullivan v. Louisiana,* 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). *Accord, State v. Chamblis,* 128 Ohio St.3d 507, 2011-Ohio-1785, 947 N.E.2d 651, ¶18 ("[T]he erroneous deprivation of a defendant's choice of counsel entitles him to an automatic reversal of his conviction.") In other words, a defendant who establishes that his right to counsel of choice was violated need not demonstrate prejudice in order to be entitled to relief, as a defendant claiming ineffective assistance of counsel is required to do. Id. *See also, Chambliss*, at ¶19.

**{¶33}** The importance of an opportunity to employ counsel of choice cannot be understated. In *Wheat v. United States* the Supreme Court reiterated,

[T]he Sixth Amendment provides protection for a criminal defendant's choice of counsel. More than 50 years ago, we stated that "[i]t is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). This Court has reiterated this principle on frequent occasions. See, *e.g., Chandler v. Fretag,* 348 U.S. 3, 9, 75 S.Ct. 1, 4-5, 99 L.Ed. 4 (1954); *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457,

464-65, 86 L.Ed. 680 (1942). Our statements on this score stem largely from an appreciation that a primary purpose of the Sixth Amendment is to grant a criminal defendant effective control over the conduct of his defense. As this Court previously has stated, the Sixth Amendment "grants to the accused personally the right to make his defense," because "it is he who suffers the consequences if the defense fails." *Faretta v. California,* 422 U.S. 806, 819-820, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). An obviously critical aspect of making a defense is choosing a person to serve as an assistant and representative. In addition, lodging the selection of counsel with the defendant generally will promote the fairness and integrity of criminal trials.

486 U.S. 153, 165-166, 108 S.Ct. 1692, 100 L.Ed.2d 140(1988) (Marshall, J., dissenting)(disagreeing with the majority's suggestion that the trial court's decision as to whether a potential conflict justifies rejection of a defendant's chosen counsel is entitled to some kind of special deference on appeal and expressing belief that the "abuse of discretion" standard is not appropriate).

{¶34} In the case at bar, Howard exercised his Sixth Amendment right by independently retaining attorney Sims. Sims and his associate assumed responsibility for Howard's defense many months in advance of trial, and he diligently represented Howard through trial and sentencing. Thus, this is not a case in which the trial court's action resulted in the defendant being forced to trial with an inadequately prepared attorney or no attorney at all.

**{¶35}** On the morning of trial, attorney Sims represented to the judge that Howard wanted Sims to remain on the case. (1T. at 5). Further, the trial judge asked Howard directly if it was Howard's choice to have attorney Sims and his associate counsel represent him at trial. Howard told the trial judge that it was his desire for counsel to continue to represent him. (1T. at 7).

**{¶36}** Howard had a fair *and* reasonable opportunity to replace Sims. Howard with the assistance of family members exercised his Sixth Amendment right by independently seeking out attorney O'Byrne. Howard's request came after the first day's voir dire had concluded and the second day's proceedings were about to begin. (2T. at 109). At that time, Howard had not retained another attorney to replace Sims. Attorney O'Byrne contradicted Howard's representation that Howard had retained O'Byrne. (1T. at 122-123; 125). At the time of the motion, there was nothing to suggest that O'Byrne would be willing or available to take Howard's case.

**{¶37}** Attorney Sims, however, did request a continuance so that Howard could retain substitute counsel of his choice. (2T. at 118-119).

**{¶38}** Over thirty years ago, this court recognized,

> With increasing frequency, trial courts are facing the issue of balancing the court's discretionary power to control his docket and trials in his court and the defendant's right under the Sixth Amendment to counsel. Frequently the issue arises upon a question of eleventh hour continuance. See *United States v. Leavitt*, 608 Fed. 2d 1290 (1979); *Gandy v. Alabama* 569 Fed. 2d 1318 (1978); *U. S. v. Inman*, 483 Fed. 2d 738 (1973); *Ungar*

*v. Sarafite*, 376 U.S. 575, 84 Sup. Ct. 841, 11 L. Ed. 2d 921 (1964); *United States v. Johnson*, 318 Fed. 2d 288 (1963).

"Basic trust between counsel and defendant is the cornerstone of the adversary system and effective assistance of counsel."

*Linton v. Perini*, 656 Fed. 2d 207 (1981).

Further, if we conclude that the record requires a finding that the trust relationship had disintegrated to the point where counsel could no longer render effective assistance, such error cannot be harmless error. *Holloway v. Arkansas* 435 U.S. 475, 98 Sup. Ct. 1173, 55 L. Ed. 2d 426 (1978); *Chapman v. California*, 386 U.S. 18, 87 Sup. Ct. 824, 17 L. Ed. 2d 705.

*State v. Pancake*, 5th Dist. No. 81-CA39, 1982 WL 3044(July 12, 1982).

**{¶39}** The Supreme Court has emphasized, however, that the right to counsel of choice is "circumscribed in several important respects." *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Indeed, there are four specific situations in which the Sixth Amendment does not entitle a defendant to preferred counsel: A defendant does not have the right to be represented by (1) an attorney he cannot afford; (2) an attorney who is not willing to represent the defendant; (3) an attorney with a conflict of interest; or (4) an advocate (other than himself) who is not a member of the bar. *Id.*

**{¶40}** In addition, the Supreme Court, in *Gonzalez–Lopez,* explicitly upheld its previous holding in *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), where the Court "recognized a trial court's wide latitude in balancing the right to

counsel of choice ... against the demands of its calendar." *Gonzalez–Lopez,* 548 U.S. at 152. The trial court's difficult responsibility of assembling witnesses, lawyers and jurors for trial "counsels against continuances except for compelling reasons." *Morris,* 461 U.S. at 11.

**{¶41}** In *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), the Court considered the matter under a due process analysis. It said:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence.... Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.... There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied...." (Emphasis added) Id. at 589, 84 S.Ct. at 849.

**{¶42}** In the case at bar, the conflict between Howard and Sims stemmed primarily from counsel's failure to paint a rosy picture of Howard's chances for full exoneration at trial.

**{¶43}** In *State v. Cowans*, 87 Ohio St.3d 68, 1999-Ohio-250, 717 N.E.2d 298 (1999) the Court in discussing substitution of appointed counsel noted, "'A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism." *Brown*

*v. United States* (C.A.D.C.1959), 264 F.2d 363, 369 (en banc), *quoted in McKee v. Harris* (C.A.2, 1981), 649 F.2d 927, 932. "'If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.'" *McKee*, 649 F.2d at 932, *quoting McKee v. Harris* (S.D.N.Y.1980), 485 F.Supp. 866, 869." Id. at 73, 717 N.E.2d at 304-305.

**{¶44}** In the case at bar, no attorney filed an appearance or made a motion for substitution of counsel. The second morning of the trial was the first time Howard had let the court know that he was unhappy with his attorney. This is after Howard had assured the court that he wanted attorney Sims to continue to represent him.

**{¶45}** Moreover, it was unclear how much time a new attorney, once hired, would have needed to prepare for Howard's trial. Other commitments in the new attorney's schedule may have made a brief continuance unrealistic. *Miller v. Blackletter*, 525 F.2d 890, 896(9th Cir 2008). Any substitution of counsel will "almost certainly necessitate a last-minute continuance." *United States v. Whitfield,* 259 F. App'x 830, 834 (6th Cir.2008).

**{¶46}** In the case at bar, no substitute counsel appeared in court to answer the trial court's questions concerning the need for a continuance. The record indicates that Howard did not intend to hire a lawyer unless the lawyer agreed with his views concerning the potential for an outright acquittal.

**{¶47}** As previously noted, Sims and his associate were retained and assumed responsibility for Howard's defense many months in advance of trial and he diligently represented Howard through trial and sentencing.

**{¶48}** Thus, this is not a case where "a myopic insistence upon expeditiousness in the face of a justifiable request for a delay render[ed] the right to defend with counsel an empty formality." *Ungar,* 376 U.S. at 588.

**{¶49}** Accordingly, given the timing of the motion in this case and the lack of any evidence of a material conflict between Howard and Sims, we conclude the trial court did not abuse its discretion in refusing to delay the trial.

**{¶50}** Howard's first assignment of error is overruled.

II.

**{¶51}** In his second assignment of error, Howard argues that sentencing Howard to consecutive sentences totaling thirty years was a punishment for Howard's having exercised his constitutional right to trial by jury.

**{¶52}** Subsumed within this assignment of error, Howard argues that the trial court erred by not merging the convictions for aggravated burglary, aggravated robbery, kidnapping and rape for purposes of sentencing pursuant to R.C. 2941.25.

**{¶53}** R.C. 2941.25, Multiple counts states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain

counts for all such offenses, and the defendant may be convicted of all of them.

**{¶54}** In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court revised its allied-offense jurisprudence. The *Johnson* court overruled *State v. Rance,* 85 Ohio St.3d 632, 710 N.E.2d 699(1999), "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25." The Court was unanimous in its judgment and the syllabus, "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)" However, the Court could not agree on how the courts should apply that syllabus holding. The *Johnson* case lacks a majority opinion, containing instead two plurality opinions, and a separate concurrence in the judgment and syllabus only. *State v. Helms*, 7th Dist. No. 08 MA 199, 2012-Ohio-1147, ¶71 (DeGenaro, J., concurring in part and dissenting in part).

**{¶55}** Justice Brown's plurality opinion sets forth a new two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25. The first inquiry focuses on whether it is possible to commit both offenses with the same conduct. Id. at ¶ 48, 710 N.E.2d 699. It is not necessary that the commission of one offense will *always* result in the commission of the other. Id. Rather, the question is whether it is *possible* for both offenses to be committed by the same conduct. Id.*,* quoting *State v. Blankenship*, 38 Ohio St.3d 116, 119, 526 N.E.2d 816(1988). Conversely, if the commission of one offense will *never* result in the commission of the other, the offenses will not merge. *Johnson* at ¶ 51.

{¶56} If it is possible to commit both offenses with the same conduct, the court must next determine whether the offenses were in fact committed by a single act, performed with a single state of mind. Id. at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 895 N.E.2d 149, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring in judgment only). If so, the offenses are allied offenses of similar import and must be merged. *Johnson* at ¶ 50. On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. Id. at ¶ 51.

{¶57} Under Justice Brown's plurality opinion in Johnson, "the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger." Id. at ¶ 47, 942 N.E. 2d 1061. Rather, the court simply must ask whether the defendant committed the offenses by the same conduct. Id.

### A. Aggravated burglary and aggravated robbery

{¶58} With respect to the charge of aggravated burglary, we find this crime recognizes the sanctity of a man's home. A citizen has an assurance of personal security in one's home, an assurance that has become part of our constitutional tradition. *Minnesota v. Carter*, 525 U.S. 83, 100, 119 S.Ct. 469, 142 L.Ed.2d 373(1978). Thus, the aggravated burglary statute recognizes that an armed robbery occurring within the sanctity of one's home deserves to be treated more severely than a robbery that occurs on a street corner.

{¶59} In the alternative, the crime of aggravated burglary was committed with a separate animus. In the case at bar, the trio gained entry into the apartment's basement by breaking the outside window. Once inside, Obermiller and Howard attempted to gain

access to the safe located in the basement. After failing to open the safe, the pair proceeded upstairs.

**{¶60}** The act of entering the basement was separate and distinct from the subsequent rape and aggravated robbery. The crime of aggravated burglary was completed when the perpetrators broke the window and entered into the basement of the residence with purpose to commit a theft offense.

**{¶61}** Accordingly, under the facts of this case aggravated burglary is not an allied offense of aggravated robbery. Thus, Howard can be convicted and sentenced for aggravated burglary and aggravated robbery.

### B. Kidnapping

**{¶62}** In *State v. Small*, 5th Dist. No. 10CAA110088, 2011-Ohio-4086, this Court recently addressed the issue of whether kidnapping was an allied offense of aggravated robbery under *Johnson,* where the kidnapping was incidental to the aggravated robbery. Citing *State v. Sidibeh,* 192 Ohio App.3d 256, 948 N.E.2d 995, 2011–Ohio–712, we noted that, in *Johnson* the Supreme Court has indicated, 'the commission of an aggravated robbery * * * would also constitute a kidnapping' when, as here, "a weapon that has been shown * * * during the commission of a theft offense * * * forcibly restrain[ ed] the liberty of another." Id. at ¶52, 942 N.E. 2d 1061, quoting *State v. Winn*, 121 Ohio St.3d 413, 2009–Ohio–1059, 905 N.E.2d 154, ¶21.

**{¶63}** In *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345(1979), syllabus, the Court set forth the following test to determine what constitutes a separate animus for kidnapping and a related offense. Specifically, the Court stated:

In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:

(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

**{¶64}** In *Logan,* the Supreme Court found no separate animus to sustain separate convictions for rape and kidnapping. 60 Ohio St.2d 126, 397 N.E.2d 1345(1979). In *Logan*, after the victim refused to accept some pills, the "defendant produced a knife, held it to her throat, and forced her into an alley. Under such duress, she accompanied him down the alley, around a corner, and down a flight of stairs, where he raped her at knifepoint." 60 Ohio St.2d. at 127, 397 N.E.2d 1345.

**{¶65}** In *State v. Price*, the appellant asked the victim if she wanted to engage in sexual intercourse. 60 Ohio St.2d 136, 398 N.E.2d 772(1979). The victim refused and returned to the car. Id. The appellant pulled the victim from the backseat of the vehicle

to a nearby area where the appellant raped the victim. Id. "The force by which [the] appellant removed [the victim] from the car to behind a nearby bush to engage in sexual conduct, as required under the rape statute, is indistinguishable from the force by which [the] appellant restrained [the victim] of her liberty, as required under the kidnapping statute." Id. at 143, 398 N.E.2d 772. The Supreme Court held the restraint and asportation of the victim necessary to substantiate the kidnapping offense were not distinct from the rape, in either time or function. *Price* at 143, 398 N.E.2d 772.

**{¶66}** In *State v. Ware*, the victim was unable to find a telephone to request a ride home from a party. 63 Ohio St.2d 84, 406 N.E.2d 112(1980). The appellant offered the victim to use his telephone at his residence. Id. The victim accepted appellant's invitation, and they began walking toward his home. After walking several blocks, they hitchhiked a ride from a passing motorist, who dropped them off within a block of appellant's residence. Shortly after they arrived, appellant laughed and stated that he did not have a telephone, and began making advances toward the victim. When she resisted, appellant picked her up, carried her upstairs to a bedroom and, under threats of death, forced her to submit to vaginal and anal intercourse. Appellant thereafter accompanied the victim back to her girlfriend's residence, a few blocks from where he was subsequently apprehended by the police. Id. The Supreme Court began its analysis by reviewing the decision in *State v. Price*,

> Price observes that the defendant's forcible asportation of his victim was to an area within close proximity of the initial confrontation, and was for the purpose of moving her to a place where the rape could be accomplished without detection. In essence, the court found the distance

to be spatially insubstantial and the movement purely incidental to the singular purpose of committing a rape.

The victim in the case at bar was forcibly moved from the lower level of appellant's residence into the upstairs bedroom, and, if these were the only facts before the court, it could be necessary to reverse appellant's kidnapping conviction. However, R.C. 2941.25(B) provides for conviction for both kidnapping and rape where these "same or similar" offenses are committed separately.

Under the facts at bar, we conclude that there was an act of asportation by deception which constituted kidnapping, and which was significantly independent from the asportation incidental to the rape itself. The two crimes were committed separately.

63 Ohio St.2d 84, 86-87, 406 N.E.2d 112(1980)(Citations omitted).

{¶67} In the case at bar, we find that the restraint of McNemar and Gabriele was merely incidental to the aggravated burglary and the aggravated robbery. The couple was never moved from their bed. They were duct taped in order to commit the aggravated burglary and the aggravated robbery. The kidnapping was part and parcel of the commission of the aggravated burglary and the aggravated robbery. No evidence exists in the record of substantial movement, prolonged restraint, or secretive confinement. *State v. Logan,* 60 Ohio St.2d 126, 397 N.E.2d 1345, at syllabus. We find the restraint did not subject the victims to a substantial increase in the risk of harm separate from that involved in the aggravated burglary and the aggravated robbery.

**{¶68}** Accordingly, we find it was error not to find the offense of kidnapping to be an allied offense of similar import to the crimes of aggravated burglary and aggravated robbery. *Johnson; Sidibeh; Small.*

### C. Rape

**{¶69}** With respect to the charge of rape, we find that this crime was separate, distinct from the crimes of aggravated burglary, aggravated robbery, and kidnapping. Howard acted on his own, with a separate animus to commit this crime. The act of rape was significantly independent from the acts constituting the other crimes. Therefore, the trial court did not err in sentencing Howard separately for this offense.

### D. Consecutive sentences

**{¶70}** Howard next contends that his sentence is disproportionate to that of his co-defendants because he chose to go to trial.

**{¶71}** As the state concedes, Taylor pled to a Bill of Information to one count of attempted burglary in violation of R.C. 2911.12(A)(2) and R.C. 2923.02(A), a felony of the third degree. He was sentenced to 3 years of community control sanctions.

**{¶72}** Obermiller pled guilty to the same crime that Howard was found guilty of by the jury with the exception of the rape charge. Obermiller received 4 years on each count, concurrent and 3 years on both firearm specifications, merged. His aggregate sentence was 7 years.

**{¶73}** R.C. 2953.08(C) provides in part that a defendant who is convicted of or pleads guilty to a felony, and who receives consecutive sentences imposed pursuant to R.C. 2929.14(E)(3) and (4), may seek leave to appeal his sentence as of right where

the sentences imposed exceed the maximum prison term allowed by division (A) of R.C. 2929.14 for the most serious offense for which the defendant was convicted.

**{¶74}** Rule 5 of the Ohio Rules of Appellate Procedure states in part:

(D) (2) Leave to appeal consecutive sentences incorporated into appeal as of right.

When a criminal defendant has filed a notice of appeal pursuant to App. R. 4, the defendant may elect to incorporate in defendant's initial appellate brief an assignment of error pursuant to R.C. 2953.08(C), and this assignment of error shall be deemed to constitute a timely motion for leave to appeal pursuant to R.C. 2953.08(C).

**{¶75}** Pursuant to App.R. 5(D), appellant has utilized this assignment of error as his motion for leave to appeal which we will sustain.

**{¶76}** Nonetheless, " * * * the right to appeal a sentence under R.C. 2953 .08(C) does not mean that consecutive sentences for multiple convictions may not exceed the maximum sentence allowed for the most serious conviction." State v. Haines, 10th Dist. No. 98AP-195, 1998 WL 767438(Oct. 29, 1998). The Court in Haines further opined:

To so construe the statute would demean the sentencing process to the point that it would permit one person to receive a maximum sentence for committing one felony while allowing another person to receive only the same maximum sentence for committing one hundred similar felonies. While the right to appeal may be granted if the conditions of R.C. 2953.08(C) are met, such right to appeal does not limit the court's ability to impose consecutive sentences.

Id.

{¶77} The most serious crime for which Howard was sentenced was a felony of the first degree with a maximum sentence of 11 years. R.C. 2929.14(A)(1). However, Howard was sentenced to nearly three times in excess of the maximum term allowed for a felony of the first degree. Thus, pursuant to R.C. 2953.08(C) the sentence is reviewable.

{¶78} In the case at bar, Obermiller provided a gun, gloves and two ski masks. Obermiller was the smaller intruder identified by McNemar and Gabriele. Obermiller was the person demanding the combination to the safe. (2T. at 310-311; 319). Obermiller was rummaging through the closet (2T. at 315). When McNemar lunged at Howard, Obermiller jumped across the bed, shoved a pistol in McNemar's eye, and asked him "do you want to live or die [?]" (2T. at 319; 4T. at 460). Obermiller attempted to flee to Pennsylvania after the crime.

{¶79} It was Taylor's idea to rob McNemar and Gabriele. (3T. at 550). Taylor helped duct tape and break the basement window. Taylor called Obermiller to alert him that the police were outside the apartment complex. Taylor initially lied to the police about his involvement and who else was involved.

{¶80} If a thirty-year sentence was "justified" for Howard however, it begs the question of why his co-defendant Obermiller received much more lenient treatment than he did.

{¶81} It is axiomatic that "a defendant is guaranteed the right to a trial and should never be punished for exercising that right [.]" *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220, 1227(1989). Thus, the augmentation of sentence based upon a

defendant's decision to stand on his right to put the government to its proof rather than plead guilty is improper. *United States v. Araujo*, 539 F.2d 287(2nd Cir. 1976), *certiorari denied sub. nom. Rivera v. United States*, 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593(1979); *United States v. Hutchings*, 757 F.2d 11, 14(2nd Cir. 1985); *United States v. Derrick*, 519 F.2d 1, 3(6th Cir. 1975). This rule applies "no matter how overwhelming the evidence of [defendant's] guilt." *Id.* at 3.

{¶82} Moreover, courts must not create the appearance that it has enhanced a defendant's sentence because he has elected to put the government to its proof. *United States v. Hutchings, supra; United States v. Stockwell*, 472 F.2d 1186, 1187(9th Cir. 1973). The chilling effect of such a practice upon standing trial would be as real as the chilling effect upon taking an appeal that arises when a defendant appeals, is reconvicted on remand, and receives a greater punishment. *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637 (8th 2005), ¶12 citing *State v. Scalf*, 126 Ohio App.3d 614, 621, 710 N.E.2d 1206 (1998) and North *Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

{¶83} In *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637 (8th 2005), the Court observed, "[If] the court makes statements that 'give rise to the inference that [the] defendant may have been punished more severely because of his assertion of the right to trial by jury,' we must vacate the sentence * * * unless the record also contains an unequivocal statement that the defendant's decision to go to trial was not considered in imposing the sentence." *Morris*, ¶13, *quoting State v. Hobbs*, 8th Dist. No. 81533, 2003-Ohio-4338, ¶71. "'Absent such an unequivocal statement, the

sentence will be reversed and the matter remanded for resentencing.'" *Morris*, ¶13, quoting *State v. Scalf*, 126 Ohio App.3d 614, 621, 710 N.E.2d 1206 (1998).

**{¶84}** Approximately one week before trial Howard was offered a deal that would limit his prison time to twelve years. (T. Jan. 23, 2012 at 6; 8). Howard rejected this deal. The trial court then stated,

> Okay. If Mr. Howard should change his mind between now and that time, I would ask that you call Ms. Hartnett immediately.
>
> MR. SIMS:   Yes.
>
> THE COURT: We'll make arrangements to bring him back. I'll squeeze it in sometime this week, if necessary.
>
> You also indicated to him that the Court was inclined accept a plea on those terms, and that *that would not likely be available once the trial has started or on the morning of trial.*
>
> MR. SIMS: Yes.     I think it clear, Your Honor, that the plea is only valid for 12 years prior to trial, but on the day of trial if the plea would be accepted, it would not be for the 12 years.
>
> THE COURT: *That's absolutely correct.*
>
> Have you also shared with him if convicted of the counts with which he is charged; the one count of rape, one count of aggravated burglary -- actually two counts of aggravated burglary, one count of kidnapping and four counts of -- no, I'm sorry. Ms. Hartnett, am I –
>
> * * *

THE COURT: Correct, and I think we calculated the maximum approximate amount of time that he could be facing if convicted of all of those things?

MS. HARTNETT: Correct. If you add up the consecutive sentences with the understanding that the gun specifications would merge into one, *you could get to 41 years*.

I believe that there is an argument that two of the F-1 offenses would have to be concurrent rather than consecutive, but I stand by the belief that certainly *a maximum of 31 years is within the realm of possibility.*

THE COURT: *Mr. Sims, have you discussed this with your client?*

(Emphasis added).

**{¶85}** By telling Howard that the Court was inclined to sentence him to 12 years before trial commenced, but on the morning of trial he would receive a sentence greater than twelve years, the trial court created the appearance that it would punish Howard more severely for exercising his right to a jury trial. *State v. Chapman*, 9th Dist. No. 09CA009672, 2010-Ohio-5924, ¶31. Its statements concerning the maximum time, which was represented to be 31 years furthered that impression.

**{¶86}** Two factors concern us in Howard's case. The statements that even if Howard were to agree to plead on the day of trial he would receive a more severe penalty. The second concern is the dichotomy between the sentence it imposed on Obermiller and the sentence it imposed on Howard.

**{¶87}** We recognize that Howard's case is distinguishable from Obermiller's in one very important respect. Howard was charged and convicted of rape; Obermiller was not. Howard's sentence is over four times more severe than his codefendant.

**{¶88}** We recognize there is no requirement that co-defendant's receive equal sentences. *State v. Lloyd,* 11th Dist. No.2002-L-069, 2003-Ohio-6417 at ¶21; *United State v. Frye*, 831 F.2d 664, 667(6th Cir 1987). However, a trial court's consideration of the sentence of a co-defendant is perfectly legitimate, even though it is not required. *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007).

**{¶89}** This discretion in the sentencing court was illustrated by the Sixth Circuit in *United States v. Presley*, 547 F.3d 625 (6th Cir. 2008). In that case, the Government appealed the district court's resentencing of defendant to 120 months, a downward variance from his Guideline range of 360 months to life. The Sixth Circuit confirmed that it is appropriate for the district court to consider codefendant's sentencing disparity, "a factor which was fully within the district court's discretion to consider." Id. at 631.

**{¶90}** In that case, the trial court found that both Presley and Davis were involved in a large-scale cocaine conspiracy. Presley pointed out several 18 U.S.C.§ 3553(a) factors favorable to him and also pointed out the disparity with co-defendant Davis who had an agreement with the Government. The Government entered into a "compromise" with Davis which resulted in a significantly lower sentence for him, described as a "windfall." The trial court, in exercising discretion authorized by [*United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)], reduced Presley's sentence to the mandatory minimum of 120 months, noting that it would be "particularly inequitable

for Davis to receive a 96 month sentence and Presley a 360 month sentence for the same conduct." Id.

> The trial judge must have broad discretion in his performance of the sentencing function. The sentence must do more than fit the crime; it must fit the particular defendant and also, on occasion, the particular moment in history when it is being imposed. It is therefore imperative that sentencing procedures be fair and that they appear to be fair- to the defendant, to those who are deeply interested in his future, and to the public at large.

*United States v. Roscaiano*, 499 F.2d 173, 175(7th Cir. 1974)(Swygert, C.J. dissenting).

**{¶91}** Because we are remanding this case for resentencing on the issue of allied offenses of similar import, we also vacate the sentences. While we in no way imply that the trial court is limited to sentencing Howard to the sentence offered during plea negotiations or to the exact sentence imposed upon any codefendant, the trial court can consider those factors. In addition, the trial court must not give the appearance that it was punishing a defendant for exercising his constitutional right to a jury trial and must not impose any punishment solely because a defendant chose to stand trial rather than plead guilty. *State v. Chapman*, 190 Ohio App.3d 528, 2010-Ohio-5924, 942 N.E. 2d 1151(9th Dist.), ¶¶ 29-33; *State v. Morris*, 159 Ohio App.3d 637, 2005-Ohio-962, 825 N.E.2d 637(4th Dist.), ¶¶12-15; *State v. Scalf*, 126 Ohio App.3d 614, 710 N.E.2d 1206, 1212(8th Dist. 1998).

**{¶92}** We remand this case for a new sentencing hearing in accordance with the law and this opinion.

{¶93} We therefore conclude that, under the facts of this case Howard's sentence must be vacated. See *State v. Morris,* 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637, ¶12–13; *Chapman*, ¶32.

{¶94} Howard's second assignment of error is sustained.

III.

{¶95} In his third assignment of error, Howard argues that he was denied effective assistance of counsel. Specifically, Howard contends that counsel did not object to the admission of Gabriele's identification; counsel's failed to request a specific jury instruction on identification evidence, and counsel's failed to present a model of the window through which Howard and Obermiller gained access to the residence.

{¶96} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶97} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley*, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.

**{¶98}** In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. Prejudice warranting reversal must be such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U. S. at 694. A court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would "reasonably likely been different" absent the errors. *Strickland*, 466 U. S. 695, 696. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, supra; *Bradley*, supra.

### *Gabriele's identification*

**{¶99}** Howard's trial counsel filed a motion to suppress seeking to exclude Gabriele's identification of Howard from the You Tube video interview. After a hearing on the motion, the trial court overruled this motion primarily because the pretrial identification procedure did not involve state action. Howard has not appealed this ruling.

**{¶100}** We cannot conclude trial counsel's performance in failing to challenge Gabriele's identification of Howard of the basis of unreliability fell below an objective standard of representation. Moreover, even if it did, Howard failed to establish there exists a reasonable probability that, but for this error, the result of the trial would have been different.

**{¶101}** Obermiller and Taylor both identified Howard as a willing participant in the plan to rob Gabriele and McNemar. Howard offers no proof or explanation as to how, but for the alleged error in admitting the identification by Gabriele, the result of the trial would have been different.

### *Jury Instructions*

**{¶102}** Howard next takes issue with counsel's failure to request a specific jury instruction on eyewitness identification.

**{¶103}** Obermiller and Taylor both identified Howard as a willing participant in the plan to rob Gabriele and McNemar. Howard offers no proof or explanation as to how, but for the alleged error in not giving a specific jury instruction on eyewitness identification, the result of the trial would have been different.

### *Model of Window*

**{¶104}** Lastly, Howard attacks his trial counsel for failing to present at trial a model of the window through which he and Obermiller broke into the residence.

**{¶105}** The jury was provided with photographs of the window during trial. His attorney amply argued the issue of the size of the window compared with Howard's stature at trial. The defense argued vociferously at trial that Howard was too big to fit through the window. The jury rejected the assertion.

**{¶106}** The Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523(1988). When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), citing *People v. Miller,* 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley,* 10th Dist. No. 03AP-340, 2004-Ohio-1008 at ¶ 21.

**{¶107}** A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298(1999); *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007-Ohio-1557, ¶ 183(11th Dist.) Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id.

**{¶108}** The decision of whether to have a model of the window for the jury to view is a strategic decision to be made by counsel. Trial counsel may have concluded that such a demonstration would have proven that Howard could have squeezed through the window thereby prejudicing his defense.

**{¶109}** Howard offers no proof or explanation as to how, but for the alleged error in not proving a model of the window to the jury, the result of the trial would have been different.

**{¶110}** Howard's third assignment of error is overruled.

IV.

**{¶111}** Howard argues by his fourth assignment of error that the trial court erred in finding him to be a sexual predator.

**{¶112}** R.C. 2950.01(G) provides, in relevant part,

(G) "Tier III sex offender/child-victim offender" means any of the following:

(1) A sex offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to any of the following sexually oriented offenses:

(a) A violation of section 2907.02 or 2907.03 of the Revised Code;

* * *

{¶113} R.C. 2907.02 is Ohio's rape statute. Howard was convicted of rape. Pursuant to the above-cited provision he was designated a Tier III sex offender. Howard's argument that the court makes the determination pursuant to R.C. 2950.09(B)(3) is feckless. That statute was repealed January 1, 2008.

{¶114} Howard's fourth assignment of error is overruled.

V.

{¶115} In his fifth assignment of error, Howard maintains that his convictions are against the sufficiency of the evidence and against the manifest weight of the evidence.

{¶116} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

{¶117} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the

inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶118} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶119} In the case at bar, Smith challenges his conviction for aggravated burglary, aggravated robbery, kidnapping and rape.

{¶120} 2911.01 Aggravated robbery, provides in relevant part,

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

* * *

{¶121} R.C. 2911.11 Aggravated burglary, provides in relevant part,

(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

* * *

(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

{¶122} R.C. 2905.01 Kidnapping, as charged in Howard's indictment provides,

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

* * *

(2) To facilitate the commission of any felony or flight there.

{¶123} R.C. 2907.02 Rape; evidence; marriage or cohabitation not defenses to rape charges, as charge in Howard's indictment provides,

* * *

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

{¶124} "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

**{¶125}** "Corroboration of victim testimony in rape cases is not required. See *State v. Sklenar* (1991), 71 Ohio App.3d 444, 447, 594 N.E.2d 88; *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346; *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854; *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 455 N.E.2d 1066." *State v. Johnson,* 112 Ohio St.3d 210, 217, 2006-Ohio-6404 at ¶ 53, 858 N.E.2d 1144, 1158.

**{¶126}** Obermiller and Taylor testified that they conspired with Howard to break into the residence of Gabriele and McNemar to steal money. Howard and Obermiller entered the residence and duct taped the occupants. They proceeded to steal $1,500.00 in cash.

**{¶127}** Accordingly, evidence was presented that Howard, while armed, entered the residence through force or stealth and committed a theft offense. Upon careful review of the record, viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Howard had committed the crimes of aggravated burglary, aggravated robbery, and kidnapping.

**{¶128}** Gabriele testified that Howard lifted her legs and she felt the tip of something inserted inside of her.

**{¶129}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Howard had committed the crime of rape. We hold, therefore, that the state met its burden of production regarding each element of the crime of rape and, accordingly, there was sufficient evidence to support Howard's conviction.

**{¶130}** We hold, therefore, that the state met its burden of production regarding each element of the crime of rape and, accordingly, there was sufficient evidence to support Howard's conviction.

**{¶131}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008–Ohio–6635, ¶ 31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter,* 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶132}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury was in the best position to evaluate this competent, credible evidence, and we will not substitute our

judgment for that of the trier of fact. The jury neither lost their way nor created a miscarriage of justice in convicting Howard of the charges.

**{¶133}** Howard's fifth assignment of error is overruled.

### *Conclusion*

**{¶134}** For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed in part, and we remand this case to the trial court for further proceedings consistent with this opinion and the law. This decision in no way affects the guilty verdicts issued by the jury. It only affects the entry of conviction and sentence. Howard's convictions are affirmed.

By Gwin, P.J.;

Hoffman, J., concurs

separately                                      _____

                                                HON. W. SCOTT GWIN

Farmer, J., dissents

                                                _____

                                                HON. WILLIAM B. HOFFMAN


                                                _____

                                                HON. SHEILA G. FARMER

WSG:clw 0318

*Hoffman, J., concurring*

{¶135} I fully concur in Judge Gwin's analysis and disposition of Appellant's first, third, fourth and fifth assignments of error.

{¶136} I also fully concur in that portion of Judge Gwin's analysis and disposition of Appellant's second assignment of error concerning all issues of merger of allied offenses.

{¶137} I further concur in Judge Gwin's decision to vacate and reconsider Appellant's sentence. I do so based solely on his conclusion there exists an appearance Appellant was penalized because he chose to exercise his right to a jury trial rather than plead guilty.

{¶138} I am not persuaded by Judge Gwin's additional reliance on the "disparate treatment" afforded Appellant's co-defendant as a grounds to vacate Appellant's sentence. Judge Gwin finds the difference in sentence "begs the question of why his [Appellant's] co-defendant Obermiller received much more lenient treatment than he did." (Majority Opinion at ¶80). While I do not believe the majority is suggesting Obermiller's seven year prison sentence is lenient, I find, unlike Judge Gwin, the disparate sentence justifiable. Appellant singularity and independently committed the crime of rape. The rape was not part of, nor necessary to further the original plan to rob the victim(s). Although Judge Gwin acknowledges this disparity alone may warrant the court in imposing a different and more severe sanction on Appellant, I disagree with his conclusion the disparity herein warrants resentencing.

{¶139} I find significant the fact Obermiller pled guilty, albeit as part of a plea bargain in exchange for his testimony at trial. This stands in sharp contrast to Appellant's maintaining his innocence and failure to accept responsibility for his actions

until after the jury reached its verdict.  Appellant's expression of remorse after the fact may well be viewed by the trial court with a skeptical eye as to its sincerity.

{¶140} Accordingly, I join Judge Gwin's decision to vacate Appellant's sentence and remand the matter for resentencing in accordance with the directive found in paragraph 91 of his Opinion.

_____
HON. WILLIAM B. HOFFMAN

*Farmer, J., dissents*

{¶141} I respectfully dissent from the majority's view that the entire sentence should be vacated. I would only remand for sentencing on allied offenses.

{¶142} I find the record does not support the disparity of sentence that was envisioned by the Ohio General Assembly. The record does not establish a historical pattern of sentencing by the trial court.

{¶143} I also take exception to the subjective wording of paragraph 84 as being unnecessary and gratuitous dicta.

{¶144} Further, by mere coincidence, this writer heard a case on appeal on April 25, 2013 wherein the trial court sub judice imposed a sentence similar to appellant's herein. *State v. Oester,* Stark App. No. 2012CA00118.


                                                    _____
                                                    HON. SHEILA G. FARMER

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
              Plaintiff-Appellee       :
                                       :
                                       :
-vs-                                   :        JUDGMENT ENTRY
                                       :
ERICK MYDELL HOWARD                    :
                                       :
                                       :
              Defendant-Appellant      :        CASE NO. 2012CA00061


        For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed in part and we remand this case to the trial court for further proceedings consistent with this opinion and the law. This decision in no way affects the guilty verdicts issued by the jury. It only affects the entry of conviction and sentence. Howard's convictions are affirmed.

        Costs split equally between appellant and appellee.


                                    _____
                                    HON. W. SCOTT GWIN


                                    _____
                                    HON. WILLIAM B. HOFFMAN


                                    _____
                                    HON. SHEILA G. FARMER