[Cite as *State v. Ross*, 2018-Ohio-3524.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 17CA011220 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOCQUEZ I. ROSS | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 17CR095533 |

## DECISION AND JOURNAL ENTRY

Dated: September 4, 2018

CALLAHAN, Judge.

{¶1} Defendant-Appellant, Jocquez Ross, appeals from an order of the Lorain County Court of Common Pleas, disqualifying his retained counsel of choice. This Court affirms.

I.

{¶2} Mr. Ross was charged with a litany of offenses, including two counts of capital murder, following the deaths of a man ("the first victim") and the man's wife ("the second victim"). He chose to retain counsel and, over the next few months, either his retained counsel or his retained counsel's law partner appeared on his behalf at several pre-trials. At one of those pre-trials, the State notified the court that it had become aware of a potential conflict of interest. It was the State's position that retained counsel had a conflict of interest because: (1) he had represented the first victim on a drug-trafficking case in 2009; (2) his law partner was representing the first victim on a drug-trafficking case at the time of his death; and (3) his law partner previously had represented both the second victim and the first victim's mother, a

potential witness in this matter. Following the State's pronouncement, the court set the matter for a disqualification hearing, and the State filed a written motion to disqualify. Based on the arguments presented at the disqualification hearing, the State's written motion, and the relevant case law, the court granted the motion to disqualify.

{¶3}    Mr. Ross now appeals from the trial court's order, disqualifying his retained counsel of choice. He raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT DISQUALIFIED DEFENDANT'S COUNSEL OF CHOICE, IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION[.]

{¶4}    In his assignment of error, Mr. Ross argues that the trial court erred when it granted the State's motion to disqualify. He contends that his retained counsel had no conflict of interest and the State failed to prove that retained counsel would not act competently and diligently on his behalf. On review, this Court does not agree that the trial court erred in its disqualification order.

{¶5}    Criminal defendants enjoy a constitutional right to counsel. Sixth Amendment; Ohio Constitution, Article I, Section 10. "[One] element of [that] right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). If a defendant has the ability to retain a qualified attorney, the Sixth Amendment generally protects his choice of counsel. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 625 (1989). "A court commits structural error when it wrongfully denies a defendant his counsel of choice, so a defendant need not demonstrate further prejudice." *State v. Miller*, 9th Dist. Summit No. 27048, 2015-Ohio-279, ¶ 8, citing *Gonzalez-*

*Lopez* at 150. The wrongful denial "entitles [the defendant] to an automatic reversal of his conviction." *State v. Chambliss*, 128 Ohio St.3d 507, 2011-Ohio-1785, ¶ 18. Moreover, because the right to one's choice of counsel is fundamental, a pretrial ruling that removes one's retained counsel of choice is immediately appealable. *See id.* at syllabus. *Accord State v. Rivera*, 9th Dist. Lorain Nos. 16CA011057, 16CA011059, 16CA011060, 16CA011061, 16CA011063, 16CA011073, 16CA011075, 2017-Ohio-8514, ¶ 5.

{¶6} Though fundamental, the constitutional right to one's counsel of choice is not absolute. *Miller* at ¶ 9, quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988). A defendant has no right to "'an attorney with a conflict of interest * **.'" *Miller* at ¶ 9, quoting *State v. Howard*, 5th Dist. Stark No. 2012CA0061, 2013-Ohio-2884, ¶ 39. Both an actual conflict and "a showing of a serious potential for conflict" justify a trial court's removal of a defendant's counsel of choice. *Wheat* at 164. That is because trial courts have an "'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" *Gonzalez-Lopez* at 152, quoting *Wheat* at 160.

> Thus, "[t]rial courts have the inherent authority to regulate the conduct of attorneys, including the disqualification of attorneys in accordance with the Ohio Rules of Professional Conduct." *Harold Pollock Co., LPA v. Bishop*, 9th Dist. Lorain No. 12CA010233, 2014-Ohio-1132, ¶ 7. *See also Avon Lake Mun. Utils. Dep't v. Pfizenmayer*, 9th Dist. Lorain No. 07CA009174, 2008-Ohio-344, ¶ 13. They enjoy broad discretion when considering motions to disqualify counsel and, therefore, "'[w]e review a trial court's determination regarding a motion to disqualify counsel for an abuse of discretion.'" *In re E.M.J.*, 9th Dist. Medina No. 15CA0098-M, 2017-Ohio-1090, ¶ 5, quoting *Pfizenmayer* at ¶ 13.

*Rivera* at ¶ 8. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶7} The Ohio Rules of Professional Conduct provide, in relevant part, that a conflict of interest exists "if * * * there is a substantial risk that [a] lawyer's ability to consider, recommend, or carry out an appropriate course of action for [a] client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests." Prof.Cond.R. 1.7(a)(2). With regard to former clients,

> [a] lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter do either of the following:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known;
>
> (2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

Prof.Cond.R. 1.9(c)(1)-(2). The Rules of Professional Conduct "impute conflicts of interest to all lawyers 'associated in a *firm*.'" (Emphasis sic.) *Carnegie Cos. v. Summit Properties, Inc.*, 183 Ohio App.3d 770, 2009-Ohio-4655, ¶ 32 (9th Dist.), quoting Prof.Cond.R. 1.10(a). "'Firm' * * * denotes a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship, or other association authorized to practice law * * *." Rule 1.0(c).

{¶8} It is undisputed that, during the timeframe relevant to this appeal, Mr. Ross' retained counsel had a law partner, and his partner appeared in his stead at several of Mr. Ross' pre-trials. The State informed the trial court that the first victim was a former client of retained counsel and, at the time of his death, a current client of the law partner. In both instances, the first victim had been facing drug-trafficking charges; a serious point of concern for the State because drugs were a possible motive for his murder. The State noted that, at the time of the first victim's death, the law partner had already been representing him for two years. The law partner also had represented the second victim in a prior criminal matter and, following the first victim's

death, had represented the first victim's mother on a civil matter. Because the mother was a potential witness in this case, the State argued that her status as a former client was another point of conflict. Indeed, prosecutors divulged that the law partner had shared with them his discomfort at appearing on behalf of Mr. Ross when the first victim's mother was present. The State noted that the mother also had come forward to express her discomfort with the arrangement.

{¶9} Based on the foregoing relationships and the concerns cited by the State, the trial court found that there was "a serious potential conflict of interest that exist[ed] which could affect [retained] counsel's representation of [Mr. Ross]." Accordingly, it granted the State's motion to disqualify. Mr. Ross argues that the court erred by doing so because there was no conflict. He notes that, pursuant to Prof.Cond.R. 1.7(a)(2), a conflict only exists if there is a "substantial risk" that an attorney's relationship with a former client will materially limit him or her in fulfilling his or her duties as counsel. He argues that, at best, the State set forth evidence of "a minor risk" in this matter. According to Mr. Ross, the State failed to allege "any reason that [his retained] counsel [would] not [have] provide[d] competent and diligent representation to [him] in his case * * *."

{¶10} Having reviewed the record, this Court cannot conclude that the trial court abused its discretion when it granted the State's motion to disqualify. *See In re E.M.J.*, 2017-Ohio-1090, at ¶ 5, quoting *Pfizenmayer*, 2008-Ohio-344, at ¶ 13. Because retained counsel and his law partner practiced law together, they were considered a "firm" for purposes of the Rules of Professional Conduct. *See* Prof.Cond.R. 1.0(c). Thus, any conflict of interest that arose for one was, by law, imputed to the other. *See Carnegie Cos.*, 2009-Ohio-4655, at ¶ 32, quoting Prof.Cond.R. 1.10(a). Even if retained counsel's representation of the first victim back in 2009

was not a cause for concern, the trial court reasonably could have concluded that there was a substantial risk his duties to Mr. Ross would be materially limited by the duties he owed to his partner's former clients. *See* Prof.Cond.R. 1.7(a)(2), 1.9(c)(1)-(2). As noted, both the victims and the first victim's mother, a potential witness in this matter, were his partner's former clients. The first victim's case, in particular, was a drug-trafficking case, and drugs were a possible motive for his murder. If any pertinent, privileged information came to light during the two-year period that the law partner acted as the first victim's counsel, both he and retained counsel would be prohibited from revealing or using that information to the disadvantage of the first victim, even if it would benefit Mr. Ross. *See* Prof.Cond.R. 1.9(c)(1)-(2). Moreover, if the first victim's mother testified in this matter, retained counsel would be placed in the position of cross-examining her despite her status as a former client. There was evidence that both the law partner and the victim's mother had already expressed their discomfort as a result of the partner acting as substitute counsel at various pre-trials. While Mr. Ross claims that there is only "a minor risk" that all the foregoing concerns will impede his retained counsel in the performance of his duties, the record supports the trial court's conclusion to the contrary.

{¶11} Notably, both an actual conflict and "a showing of a serious potential for conflict" justify a trial court's removal of a defendant's counsel of choice. *Wheat*, 486 U.S.at 164. The trial court, acting in its sound discretion, reasonably could have concluded that there was a serious potential for conflict if retained counsel continued to represent Mr. Ross. *See id.* Accordingly, this Court cannot conclude that it erred in its decision to disqualify retained counsel. Mr. Ross' sole assignment of error is overruled.

III.

**{¶12}** Mr. Ross' sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JACK W. BRADLEY, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NICHOLAS A. BONAMINIO, Assistant Prosecuting Attorney, for Appellee.