[Cite as *State v. Howard*, 2020-Ohio-5057.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-L-153** |
| DEVIN D. HOWARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2018 CR 000838.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, *Karen A. Sheppert*, and *Jason R. Shachner*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mandy J. Gwirtz*, Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, OH 44123 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Devin D. Howard, appeals his convictions for Aggravated Robbery and Identity Fraud following a jury trial in the Lake County Court of Common Pleas. For the following reasons, Devin's convictions are affirmed.

{¶2} On January 25, 2019, the Lake County Grand Jury returned an Indictment charging Devin with: Aggravated Robbery (Count 1), a felony of the first degree in violation of R.C. 2911.01(A)(1); Kidnapping (Counts 2 and 3), felonies of the first degree in violation of R.C. 2905.01(A)(2); Complicity to Safecracking (Count 4), a felony of the

fourth degree in violation of R.C. 2923.03(A)(4) and R.C. 2911.31(A); and Identity Fraud (Count 5), a felony of the fifth degree in violation of R.C. 2913.49(B)(1). Counts 1 through 4 carried firearm specifications pursuant to R.C. 2941.145.

{¶3} On February 1, 2019, Devin, represented by appointed counsel, was arraigned and entered a plea of "not guilty" to the charges in the Indictment. Bond, set previously in municipal court proceedings, was continued.

{¶4} On March 7, 2019, Devin filed a Motion to Discharge & Substitute Counsel and a Motion to Suppress & Return Evidence. The trial court denied both Motions on the following day.

{¶5} Similar Motions were filed on March 8, 2019, and denied on March 15, 2019.

{¶6} On March 22, 2019, the trial court granted a defense motion for Devin to undergo a competency evaluation. On this day, Devin posted bond and was released from custody.

{¶7} On April 10, 2019, the trial court revoked Devin's bond and issued a warrant for his arrest on account of his failure to report for his competency evaluation.

{¶8} On July 8, 2019, Devin was taken into custody.

{¶9} On July 15, 2019, retained counsel entered an appearance on Devin's behalf.

{¶10} On July 19, 2019, the trial court ordered Devin transferred from the Lake County Jail to a secure forensic unit at Northcoast Behavioral Healthcare Center for the purposes of a competency evaluation. The Lake County Adult Probation Department reported that it "was unable to conduct the ordered competency evaluation due to [Devin's] lack of cooperation and unable to confirm whether this is due to mental illness or refusal to participate."

2

{¶11} On September 9, 2019, the trial court determined that Devin was competent to stand trial.

{¶12} Devin's case was tried to a jury between September 23 and 25, 2019. Prior to jury selection, Devin asserted his "right to remove the retained counsel." The court construed the assertion as a motion to discharge retained counsel and denied it. The State presented the following testimony:

{¶13} On July 26, 2018, Officer Randy Mullenax of the Willoughby Hills Police Department was dispatched to the Dollar Tree on Chardon Road at 9:13 p.m. to investigate a robbery. After speaking with Dollar Tree employees, Mullenax ran the name Kahri Howard through LEADS. The employees identified Kahri as the perpetrator and a warrant was obtained for his arrest.

{¶14} Todd Alan Dudash was the assistant manager working at Dollar Tree on July 26, 2018. At closing time, Dudash noticed a former employee known as Kahri in the store. Dudash identified Devin as Kahri in court. Kahri (Devin) brandished a gun and forced Dudash and another employee to add funds to "Green Dot" prepaid debit cards. After loading the cards, Kahri (Devin) released the other employee and made Dudash give him the deposit bags out of the store's safe. Kahri (Devin) then exited through a back door in the stockroom.

{¶15} Leslee Lamp was the store manager at Dollar Tree and hired a person known as Kahri in the spring of 2018. As part of the hiring process, Kahri produced a driver's license identifying himself as Kahri Howard. Lamp identified Devin in court as Kahri. On the night of the robbery, Lamp was summoned to the Dollar Tree and identified a LEADS photograph of Kahri (Devin) as the person she had hired.

{¶16} Queshonda Stanford was a cashier at Dollar Tree on July 26, 2018. She

identified Devin as the last person in the store that evening. At gunpoint, Devin forced her to load funds onto Green Dot cards. He then allowed her to leave the store.

{¶17} Kahri Howard testified that Devin is his brother and they used to live together. Devin owned guns, including an AR-15 and a handgun. On one occasion, Kahri was at the Dollar Tree in Willoughby Hills and a manager asked him where his brother Kahri was. About two weeks after this incident, the police came to his apartment and told him that he was going to be charged with armed robbery. Kahri denied working at Dollar Tree and told the police that he was at his mother's apartment on the night of July 26. Kahri identified Bureau of Motor Vehicle records containing his name and social security number matched with a picture of Devin.

{¶18} Lisa Jones is the mother of Devin and Kahri Howard. She testified that Kahri has a learning disability and would not be capable of working at Dollar Tree. She confirmed that Kahri was with her on the evening of July 26.

{¶19} Rebecca Silverstein, a forensic analyst with the Lake County Crime Laboratory, tested various items (a card, a highlighter, and a clipboard) from the Dollar Tree for fingerprints, but the results were inconclusive as to who had handled the items, with the exception of a single print belonging to Stanford.

{¶20} Detective Jamie Onion of the Willoughby Hills Police Department collected evidence and DNA samples from the crime scene for submission to the Lake County Crime Laboratory. The items submitted, however, contained too little genetic information for forensic identification. Onion also assisted in executing the arrest warrant for Kahri. After interviewing Kahri and his mother, the investigation focused on Devin as the suspect. Devin was located on August 14, 2018, walking on Euclid Avenue and fled upon the approach of the police. Devin was ultimately apprehended by a canine unit with the

4

Euclid Police Department.

{¶21} A recorded interview of Devin was played for the jury. In it, Devin admitted that he obtained fraudulent identification identifying himself as Kahri and worked at the Dollar Tree where he was known as Kahri. He admitted that he robbed the store using a stolen handgun that was loaded although no bullet was in the chamber. Devin also claimed that he was a habitual user of cocaine, Xanax, marijuana, and alcohol and that substance abuse was a significant influence on his behavior.

{¶22} Devin testified in his own defense. He denied that he had either worked at or robbed the Dollar Tree. Devin claimed Detective Onion had threatened to prosecute Kahri for possession of the AR-15 unless he would confess to the robbery and, therefore, his confession was coerced. Devin also claimed that prior to the confession he was abusing drugs and alcohol which affected his ability to "grasp the concept" although he could still understand and respond to questions. Finally, Devin asserted that he was "effectively in shock" during the confession as a result of the police unleashing the canine against him in an "excessive use of police force."

{¶23} On September 25, 2019, the jury returned its verdict finding Devin guilty of all Counts charged in the Indictment.

{¶24} On October 24, 2019, the sentencing hearing was held. The trial court found that Counts 1 (Aggravated Robbery), 2 (Kidnapping), 3 (Kidnapping), and 4 (Complicity to Safecracking) merged for the purposes of sentencing. The State elected to proceed on the Aggravated Robbery charge. Devin was sentenced to serve ten years in prison for Aggravated Robbery concurrently with eleven months in prison for Identity Fraud and an additional three years for the firearm specification. The court further advised Devin that he would be subject to five years of mandatory post release control.

5

Devin's sentence was memorialized on October 29, 2019.

{¶25} On December 2, 2019, a notice of appeal was filed. On appeal, Devin raises the following assignments of error:

[1.] The trial court violated the defendant-appellant's constitutional right of self-representation and effective representation as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

[2.] The defendant-appellant's constitutional rights to due process and fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution were prejudiced by the ineffective assistance of trial counsel.

[3.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

[4.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).

{¶26} In the first assignment of error, Devin claims the trial court erred by denying his request to remove his trial attorney. About fifteen minutes prior to the commencement of trial, Devin advised the court:

I am being compelled by this court to go to trial without an attorney and that is in violation of my constitutional rights. I am not and I do not consent for the retained attorney to speak on my behalf and I won't be able to go to trial today.

Although no explanation was given to the court as to why Devin did not consent to representation, it is noted on appeal that he had previously sought to file pro se motions to suppress evidence. At a change of plea hearing on September 16, 2018, Devin sought a continuance in order to prepare motions for "employment of expert witnesses," "a subpoena duces tecum," and to "subpoena records from the arresting police department." Retained counsel advised the court that he did "not believe that those motions have any bearing on this case" or that they were "substantive" and that he would "not be filing those

6

motions on behalf of [Devin]."

{¶27} "It is well established that the right to counsel of one's choice is an essential element of the Sixth Amendment right to have the assistance of counsel for one's defense." *State v. Lacey*, 8th Dist. Cuyahoga No. 102812, 2016-Ohio-1375, ¶ 15. "Though fundamental, the constitutional right to one's counsel of choice is not absolute." *State v. Ross*, 2018-Ohio-3524, 108 N.E.3d 1247, ¶ 6 (9th Dist.); *State v. Lindsey*, 8th Dist. Cuyahoga No. 106111, 2019-Ohio-782, ¶ 33. Rather, "'the essential aim of the Amendment is to guarantee an effective advocate * * * rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'" *State v. Ponce*, 2012-Ohio-4572, 977 N.E.2d 1062, ¶ 15 (7th Dist.), quoting *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Courts have "'wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar.'" *State v. Frazier*, 8th Dist. Cuyahoga No. 97178, 2012-Ohio-1198, ¶ 26, quoting *United States v. Gonzalez-Lopez,* 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). In particular, "trial courts continue to have the authority to limit a defendant's right to counsel of choice when faced with a belated request to change attorneys." *State v. Daniels*, 11th Dist. Trumbull No. 2019-T-0079, 2019-Ohio-5314, ¶ 15.

{¶28} Concomitant to the right to one's choice of counsel is the right to discharge counsel. *State v. Ross*, 2018-Ohio-3524, 108 N.E.3d 1247 (9th Dist.), ¶ 5 ("[a] court commits structural error when it wrongfully denies a defendant his counsel of choice") (citation omitted); *United States v. Jimenez-Antunez,* 820 F.3d 1267, 1271 (11th Cir.2016) ("[a] defendant exercises the right to counsel of choice when he moves to dismiss retained counsel"). Unlike where counsel is appointed for an indigent defendant, a defendant who

7

has retained counsel does not need to demonstrate cause in order to discharge counsel. *United States v. Brown*, 785 F.3d 1337, 1344 (9th Cir.2015); *compare State v. Harrison*, 9th Dist. Summit No. 20080, 2001 WL 39600, *1 ("[t]o discharge a court-appointed attorney, the defendant must demonstrate to the court justifiable cause for the discharge of the appointed counsel and the request for appointment of new counsel"). Nonetheless, "'[a] trial court [ ] [possesses] wide latitude in balancing the right to counsel of choice against the needs of fairness * * * and against the demands of its calendar.'" *State v. Miller*, 9th Dist. Summit No. 27048, 2015-Ohio-279, ¶ 9, citing *Gonzalez-Lopez* at 152.

{¶29} When a request to discharge counsel is made so close to the commencement of trial as to require the trial be delayed, courts will often consider the request by using the criteria for granting a continuance. "Therefore, when considering a motion for a continuance or for new counsel, a trial court must balance 'any potential prejudice to a defendant against concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'" *State v. Hicks*, 2d Dist. Greene No. 2005-CA-140, 2006-Ohio-6662, ¶ 25, quoting *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). "When a defendant's request for new counsel is made for purposes of delay or made in bad faith, the court's interest in the orderly and efficient administration of justice outweighs the defendant's right to counsel of his choice." *State v. Griesmar*, 11th Dist. Lake No. 2009-L-061, 2010-Ohio-824, ¶ 20; *Lindsey* at ¶ 35; *State v. Burrell*, 11th Dist. Lake No. 2013-L-024, 2014-Ohio-1356, ¶ 29 ("[w]hen a motion to substitute counsel is made on the day of trial, this 'intimates such motion is made in bad faith for the purposes of delay'") (citation omitted).

{¶30} "Whether a trial court errs by refusing to allow a defendant to discharge his or her counsel or seek substitute counsel is reviewed under an abuse of discretion

8

standard." (Citation omitted.) *Burrell* at ¶ 21.

{¶31} We find no abuse of discretion in the trial court's denial of Devin's attempt to substitute counsel. The court justifiably concluded that Devin was further attempting to delay the proceedings. In support of its ruling, the court reviewed the procedural history of the case noting the ways in which Devin's conduct had delayed the proceedings. A court is under no obligation to allow the substitution or discharge of counsel on the day of trial where the motion is "utilized as a way to delay the proceedings or trifle with the court." (Citation omitted.) *State v. Stein*, 3d Dist. Mercer No. 10-17-13, 2018-Ohio-2345, ¶ 20.

{¶32} Assuming, arguendo, that Devin sought to discharge counsel because counsel had failed to file the motions he wanted filed, that reason is insufficient to compel a trial court to allow the substitution. "[A] defendant has no constitutional right to determine trial tactics and strategy of counsel." *State v. Donkers*, 170 Ohio App.3d 509, 2007-Ohio-1557, 867 N.E.2d 903, ¶ 183 (11th Dist.). "Rather, decisions about viable defenses are the exclusive domain of defense counsel after consultation with the defendant." *Id.*; *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 150 ("[d]isagreements between attorney and client over trial strategy do not warrant substitution of counsel").

{¶33} Finally, Devin suggests on appeal that the trial court's decision deprived him of the right to represent himself. At the September 16 change of plea hearing, retained counsel suggested that Devin would like to represent himself to which Devin responded, "not at all." "The constitutional right of self-representation is waived if it is not timely and unequivocally asserted." (Citation omitted.) *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 38. In the present case, Devin's assertion was neither timely nor unequivocal.

9

{¶34} The first assignment of error is without merit.

{¶35} In the second assignment of error, Devin claims trial counsel was constitutionally ineffective. Specifically, "trial counsel was ineffective due to his failure to file a Motion to Suppress on his behalf, counsel's failure to object to prejudicial bad acts evidence being admitted into evidence and counsel's failure to object to impermissible hearsay and leading questions." Appellant's brief at 13.

{¶36} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus; *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000). With respect to counsel's performance, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The element of prejudice means "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

{¶37} Devin contends there were "reasonable grounds" for filing a motion to suppress on the grounds that he "was under the influence of drugs while being interviewed by police" and "had just been attacked by the police K9 officer." Appellant's brief at 12. We disagree.

{¶38} The voluntariness of a confession is evaluated under the totality of the

10

circumstances, "including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." (Citation omitted.) *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 107. The Ohio Supreme Court has been consistent that "a waiver is not involuntary *unless* there is evidence of police coercion, such as physical abuse, threats, or deprivation of food, medical treatment, or sleep." *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 35; *State v. Treesh*, 90 Ohio St.3d 460, 472, 739 N.E.2d 749 (2001) ("we need not assess the totality of the circumstances unless we find that the tactics used by the detectives were coercive"). This court has held that "the presence of drugs or alcohol should be considered, (but) the amount must sufficiently impair the confessor's abilities to reason." (Citation omitted.) *State v. Cameron*, 11th Dist. Lake No. 2007-L-004, 2007-Ohio-6935, ¶ 19.

{¶39} The video recording of Devin's confession demonstrates the complete absence of police coercion or the impairment of Devin's ability to reason. The claim raised at trial, that Detective Onion threatened to prosecute Kahri if Devin did not confess, was not mentioned in either of the pro se Motions to Suppress filed by Devin. Trial counsel's decision not to move to suppress the confession cannot be deemed unreasonable or prejudicial. *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 28 ("the failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record demonstrates that the motion would have been successful if made") (cases cited).

{¶40} Devin also argues trial counsel was ineffective for allowing testimony regarding the AR-15 into evidence. Detective Onion testified that Kahri indicated to him

11

that Devin kept an AR-15 in his bedroom, which testimony Devin further claims was hearsay. Kahri testified likewise during his testimony. Devin discusses the AR-15 in the video confession although defense counsel had the opportunity to have that part of the video redacted. Devin claims this evidence "was only introduced to make [Devin] appear to have fear-inducing guns since the Willoughby Hills police were unable to find the firearm alleged to have been used in the crime." Appellant's brief at 9.

{¶41} Trial counsel's failure to oppose the testimony regarding the AR-15 does not support a claim of ineffective assistance. The trial court concluded, and we agree, that the inclusion of the testimony regarding the AR-15 was deliberate trial strategy inasmuch as Devin alleged that Detective Onion used the presence of the rifle in Kahri's apartment as leverage to coerce a confession. At sentencing, the court observed:

> I do find that the defense chose to leave that in the video. Obviously, they had the video prior to trial, agreed on the redactions that would be utilized, and it ended up being integral to the defendant's defense in this matter. Had the defendant not testified or testified otherwise, I would have considered a curative instruction to the jury before they deliberated on this case, but based on the facts of the defendant's own testimony, I found it to be trial strategy that that was left in the video.

Moreover, Detective Onion gave a de facto curative instruction when he testified that it was not illegal to own the rifle and that it was "not part of this case."

{¶42} Devin also faults trial counsel for not objecting to Detective Onion's testimony regarding his interview with Kahri, "almost all of [which] was impermissible hearsay." Appellant's brief at 13. Arguably, this testimony was not hearsay inasmuch as it was necessary to explain how the investigation turned from Kahri to Devin. *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980) ("extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed"). Assuming, arguendo, that it was inadmissible

12

hearsay, there was no prejudice. There was nothing of substance in Detective Onion's description of the interview with Kahri that Kahri did not testify to during his own testimony. *State v. O'Neal*, 87 Ohio St.3d 402, 411, 721 N.E.2d 73 (2000) (admission of hearsay deemed harmless where it was duplicative of admissible testimony and where defendant confessed the crime); *In re D.W.*, 8th Dist. Cuyahoga No. 107920, 2019-Ohio-3104, ¶ 33 ("[w]hen a hearsay declarant is examined at trial 'on the same matters as contained in impermissible hearsay statements and where admission is essentially cumulative, such admission is harmless'") (citation omitted).

{¶43} Finally, Devin claims trial counsel failed to object to leading questions. The portions of the trial transcript referred to in the appellant's brief do not demonstrate the objectionable use of leading questions. The prosecutor used such questions to facilitate the witnesses' narrative rather than elicit incriminating statements. Evid.R. 611(C) ("[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony").

{¶44} The second assignment of error is without merit.

{¶45} In the third and fourth assignments of error, Devin argues that his convictions are against the manifest weight of the evidence and are not supported by sufficient evidence.

{¶46} Criminal Rule 29(A) provides that "[t]he court * * * shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d

259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶47} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the weight of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Hall*, 11th Dist. Lake Nos. 2019-L-027 and 2019-L-031, 2019-Ohio-4000, ¶ 42.

{¶48} Devin raises no specific arguments regarding the weight or sufficiency of the evidence supporting his convictions, but rather argues generally that "sufficient evidence was not presented" and that "the evidence was not evidence that proved him guilty beyond a reasonable doubt." Appellant's Brief at 16.

{¶49} Devin's conviction for Aggravated Robbery was supported by sufficient evidence and the weight of the evidence inasmuch as, according to the testimony of Dudash and Stanford and by his own confession, he brandished a deadly weapon being a firearm during the commission of a theft offense. R.C. 2911.01(A)(1) and R.C. 2941.145.

{¶50} Devin's conviction for Identity Fraud was supported by sufficient evidence and the weight of the evidence inasmuch as, according to the testimony of Kahri and by his own confession, he obtained and used Kahri's name and social security number without his consent with the intent of holding himself out as Kahri. R.C. 2913.49(B)(1).

{¶51} The third and fourth assignments of error are without merit.

{¶52} For the foregoing reasons, Devin's convictions are affirmed. Costs to be taxed against the appellant.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.