[Cite as *State v. Green*, 2024-Ohio-997.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

STATE OF OHIO

    Appellee

    v.

EDWARD J. GREEN

    Appellant

C.A. No.     23CA0009-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    22CR0148

DECISION AND JOURNAL ENTRY

Dated: March 18, 2024

---

STEVENSON, Judge.

**{¶1}** Appellant, Edward J. Green, appeals from the decision of the Medina County Court of Common Pleas disqualifying defense counsel. This Court affirms as the trial court did not abuse its discretion when it granted the State's motion to disqualify counsel due to a serious potential conflict of interest.

I.

**{¶2}** Mr. Green was charged in the indictment with seven counts of illegal use of minor or impaired person in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3)(B), felonies of the fourth degree. The trial court found Mr. Green indigent at his arraignment and appointed counsel on his behalf. Mr. Green pled not guilty to all charges and the matter was set for a jury trial. Mr. Green subsequently retained Attorney David G. Gedrock to represent him.

**{¶3}** As the matter proceeded, the State identified J.W. as a witness. Based on the evidence in the record, at all pertinent times, J.W. was an inmate at either the Medina County Jail or the Marion Correctional Camp.

**{¶4}** In discovery, the State produced a disk, which is not in our record on appeal, of a purported 432 recorded jail calls ("the disk"), with most of the calls allegedly made by its witness, J.W. The disk also allegedly included some phone calls made by Mr. Green on J.W.'s phone card. The disk was the basis of one of Mr. Green's motions to continue trial.

**{¶5}** Letters from J.W. or to J.W.'s girlfriend were also identified as exhibits. In a supplemental exhibit list, Mr. Green identified three letters from J.W. that he intended to introduce as exhibits. Mr. Green also identified as an exhibit a letter that he wrote to J.W.'s girlfriend.

**{¶6}** As the matter got closer to trial, the State moved to disqualify Attorney Gedrock due to a conflict of interest with his former representation of J.W. The State brought the alleged conflict to the trial court's attention after J.W. informed prosecutors that Attorney Gedrock previously represented him. The State told the trial court that Attorney Gedrock was J.W.'s attorney "for months and pled him guilty to a case." Attorney Gedrock did not dispute or challenge this representation.

**{¶7}** It was not disputed that Attorney Gedrock would have to cross-examine J.W., his former client, at Mr. Green's trial. The State argued that it will not know until trial whether J.W.'s credibility becomes an issue. The State further argued that if J.W.'s credibility became an issue, the court would have to stop trial and conduct a hearing to determine whether Attorney Gedrock acquired his knowledge in the scope of the attorney/client relationship with J.W.

{¶8} Attorney Gedrock represented that he did not remember much of his prior case with J.W. Attorney Gedrock further argued that, because his defense and cross-examination will be based on what he has discovered in this matter, he will not be violating any confidences.

{¶9} Attorney Gedrock also informed the court that he went to the jail the evening before the hearing and presented J.W. with a waiver. J.W. did not sign a waiver at that time.

{¶10} On the day of the hearing, Attorney Christine Russo went to the jail to talk to J.W. about signing a waiver. According to Attorney Russo, she explained to J.W. that, even though J.W. and Mr. Green's cases are unrelated, anything that Attorney Gedrock knows about J.W. could be used against him and used to challenge his credibility in cross-examination. J.W. did not sign a waiver when he was with Attorney Russo at the jail.

{¶11} J.W. signed a waiver at the oral hearing. The waiver signed by J.W., introduced, by Attorney Gedrock and marked at the oral hearing as Exhibit A, states:

> I, [J.W.], a client of Attorney David V. Gedrock in **State of Ohio v. [J.W.]** * * * understand that Attorney Gedrock is representing Ed Green in **State of Ohio v. Edward Green** * * *.
>
> I understand that the two cases are not the same nor are they substantially related in subject matter. I know this because, I have been interviewed and briefed by the prosecution. Based upon this I know that my interests in the first case are not materially adverse to the interests of Edward Green in this case. There is no confidential information or attorney/client privileged information from my case with Attorney Gedrock that can be used against me by Attorney Gedrock in Mr. Green's case.
>
> Confident that I can help them, the prosecution has called me as a possible witness in **State of Ohio v. Green.** I understand, if I am called as a witness in **State of Ohio v. Green** I will be subject to cross-examination by Attorney Gedrock. I accept and acknowledge this fact.
>
> I therefore knowingly and with informed consent, confirmed in writing, waive any and all possible conflicts of interest Attorney Gedrock may have between his representation of me and his representation of Mr. Green.

* * *

(Emphasis sic.)

{¶12} The trial court next addressed two waivers signed by Mr. Green. Mr. Green signed the first waiver, introduced and marked as Exhibit B, the day before the oral hearing. The first waiver states:

> I, Edward Green, the client of Attorney David V. Gedrock in **State of Ohio v. Edward Green** * * * understand that Attorney Gedrock represented [J.W.] in **State of Ohio v. [J.W.]** * * *.
>
> I understand that [J.W.], Attorney Gedrock's former client has been subpoenaed as a witness against me.
>
> I understand that the two cases are not the same nor are they substantially related in subject matter.
>
> Attorney Gedrock has assured me that his anticipated cross-examination of [J.W.] is based solely upon what he has learned/uncovered in preparation for my case. He has further assured me that he will not use, nor did he ever intend to use any confidential information or attorney/client privileged information from [J.W.'s] case in my case. Yet despite this I understand there is a substantial risk that Attorney Gedrock's ability to consider, recommend or carry out the appropriate course of action for my case may be compromised.
>
> * * *

(Emphasis sic.) The first waiver also included a paragraph discussing what would happen if J.W. did not sign a separate waiver.

{¶13} Attorney Gedrock explained that he prepared the first waiver so there would be no question that Mr. Green understood all possible complications or ramifications. The first waiver, according to Attorney Gedrock, recognized all possible negative aspects of the former representation of J.W.

{¶14} Mr. Green signed the second waiver, introduced by Attorney Gedrock and marked as Exhibit C, the day of the oral hearing. The difference between Mr. Green's waivers is that the second waiver did not include the sentence "[y]et despite this I understand there is a

substantial risk that Attorney Gedrock's ability to consider, recommend or carry out the appropriate course of action for my case may be compromised." A paragraph detailing what could happen if J.W. did not sign a waiver was also omitted from the second waiver. The State argued that, even if the court does not find that an actual conflict exists, the waivers may be disregarded as there is a risk of an actual conflict at trial

{¶15} The trial court disqualified Attorney Gedrock as counsel. With respect to the first waiver signed by Mr. Green, the trial court stated:

> It says, 'Attorney Gedrock has assured me that his anticipated cross-examination of [J.W.] is based solely upon what he has learned or uncovered in preparation for my case. He has further assured me that he will not use, nor did he ever intend to use any confidential information or attorney/client privileged information from [J.W.'s] case in my case. Yet despite this, I understand there is a substantial risk that Attorney Gedrock's ability to consider, recommend or carry out the appropriate course of action for my case may be compromised.'
>
> * * *
>
> the meaning to me of that paragraph is that you're acknowledging that there's a substantial risk to [Mr. Green's] case.

{¶16} The trial court issued a written journal entry granting the State's motion to disqualify Attorney Gedrock. Mr. Green appeals the trial court's judgment, citing four assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR NO[.] 1:**

**WHERE THE STATE MOVES TO DISQUALIFY A DEFENDANT'S COUNSEL FOR AN ALLEGED CONFLICT OF INTEREST, THE FAILURE OF THE TRIAL COURT TO REQUIRE THE STATE TO PROVE THE NEED FOR SUCH DISQUALIFICATION IS REVERSIBLE ERROR[.]**

**ASSIGNMENT OF ERROR [NO.] 2:**

**THE COURT ERRED WHEN IT ENTERTAINED THE STATE'S MOTION TO DISQUALIFY DEFENDANT'S COUNSEL[.]**

**ASSIGNMENT OF ERROR NO[.] 3:**

**THE COURT VIOLATED THE DEFENDANT'S OHIO AND U.S. CONSTITUTIONAL RIGHTS WHEN IT DISQUALIFIED HIS COUNSEL.**

**ASSIGNMENT OF ERROR NO[.] 4:**

**THE COURT DECISION TO DISQUALIFY THE DEFENSE COUNSEL BASED UPON THE INFORMED CONSENT FORM WAS AN ABUSE OF DISCRETION.**

{¶17} Mr. Green argues in his assignments of error that the trial court erred and abused its discretion when it considered and granted the State's motion to disqualify counsel. As the assignments of error are related, this Court will address them together for ease of review. For the reasons discussed below, we disagree with Mr. Green's assignments of error.

{¶18} Criminal defendants enjoy a constitutional right to counsel. Sixth Amendment; Ohio Constitution, Article I, Section 10. "[One] element of [that] right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). If a defendant has the ability to retain a qualified attorney, the Sixth Amendment generally protects his choice of counsel. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). "A court commits structural error when it wrongfully denies a defendant his counsel of choice, so a defendant need not demonstrate further prejudice." *State v. Miller*, 9th Dist. Summit No. 27048, 2015-Ohio-279, ¶ 8, citing *Gonzalez-Lopez* at 150. "[B]ecause the right to one's choice of counsel is fundamental, a pretrial ruling that removes one's retained counsel of choice is immediately appealable." *State v. Ross*, 9th Dist. Lorain No. 17CA011220, 2018-Ohio-3524, ¶ 5, citing *State v. Chambliss*, 128 Ohio St.3d 507, 2011-Ohio-1785, syllabus.

{¶19} A criminal defendant's right to choose his own counsel is not unlimited. *State v. Keenan*, 81 Ohio St.3d 133, 137 (1998); *Miller* at ¶ 9. "'A defendant does not have the right to

be represented by * * * an attorney with a conflict of interest * * *.'" *Miller* at ¶ 9, quoting *State v. Howard*, 5th Dist. Stark No. 2012CA00061, 2013-Ohio-2884, ¶ 39, citing *Wheat v. United States*, 486 U.S. 153, 159 (1988). As this Court has recognized, "[b]oth an actual conflict and 'a showing of a serious potential for conflict' justify a trial court's removal of a defendant's counsel of choice." *Ross* at ¶ 6, quoting *Wheat* at 164. This is because trial courts have an "'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" *Gonzalez-Lopez* at 152, quoting *Wheat* at 160. Ross at ¶ 6.

{¶20} "Trial courts have the inherent authority to regulate the conduct of attorneys, including the disqualification of attorneys in accordance with the Ohio Rules of Professional Conduct." *Harold Pollock Co., L.P.A. v. Bishop*, 9th Dist. Lorain No. 12CA010233, 2014-Ohio-1132, ¶ 7. Trial courts "enjoy broad discretion when considering motions to disqualify counsel and, therefore, '[w]e review a trial court's determination regarding a motion to disqualify counsel for an abuse of discretion.'" (Citations omitted.) *Ross* at ¶ 6.

{¶21} Hence, in order to prevail on appeal, Mr. Green must show that the trial court abused its discretion when it disqualified Attorney Gedrock. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An unreasonable decision is one that lacks sound reasoning to support the decision. *Hageman v. Bryan City Schools*, 10th Dist. Franklin No. 17AP-742, 2019-Ohio-223, ¶ 13. "An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard." *Id.*, citing *Porter, Wright, Morris & Arthur, LLP v. Frutta del Mondo, Ltd.*, 10th Dist. Franklin No. 08AP-69, 2008-Ohio-3567, ¶ 11. An unconscionable decision is "one that affronts the sense of justice, decency, or reasonableness." *Id.*

{¶22} Because he formerly represented J.W., and will have to cross-examine J.W. in this case, Attorney Gedrock prepared and presented J.W. and Mr. Green with written waivers. J.W. and Mr. Green signed the written waivers. A court may find a showing of a serious potential for conflict when defense counsel previously represented a current state witness. *See State v. Johnson*, 10th Dist. Franklin Nos. 13AP-997, 13AP-999, 2015-Ohio-3248, ¶ 90; *United States v. Falzone*, 766 F.Supp. 1265, 1271 (W.D.N.Y.1991); *State v. Hackney*, 6th Dist. Lucas No. L-20-1193, 2021-Ohio-2064, ¶ 16.

{¶23} "The [c]ourt need not wait for the conflict to actually present itself at trial." *United States v. Puryear*, 719 F.Supp.2d 571, 574 (W.D.Pa.2010). Hence, provided there is a showing of an actual conflict or a serious potential for conflict, the trial court does not have to take a wait and see approach and risk trial disruption.

{¶24} "Courts have recognized the 'obvious' potential for conflict where defense counsel 'is under a duty to represent zealously the defendant, while on the other hand, he has a duty of confidentiality to his former client, the government witness.'" *Johnson* at ¶ 91, quoting *Falzone* at 1271*; Hackney* at ¶ 16. Ohio courts have recognized that "an attorney's duty of loyalty to a client 'requires disqualification when a former client seeks to cooperate and testify against the present client.'" *Johnson* at ¶ 91, quoting *United States v. Alvarez*, S.D. Fla. No. 10-20547-CR, 2010 WL 4774649 (Nov. 16, 2010); *Hackney* at ¶ 16. "The potential for conflict arises especially in the context of cross-examination, as defense counsel's 'most important function' during a criminal trial is to 'vigorously cross-examine the government's witness.'" *Johnson* at ¶ 91, quoting *Falzone*, 766 F.Supp. at 1271. *See also Moscony*, 927 F.2d at 750 ("Conflicts of interest arise whenever an attorney's loyalties are divided * * * and an attorney who cross-examines former clients inherently encounters divided loyalties[.]"). This Court addressed a state's motion to

disqualify counsel in *Ross*, 9th Dist. Lorain No. 17CA011220, 2018-Ohio-3524. Retained counsel's alleged conflict in *Ross* was that counsel or counsel's law partner represented deceased victims in the case as well as a victim's mother who was identified as a potential witness. An appeal was filed after the trial court granted the state's motion to disqualify, finding "that there was 'a serious potential conflict of interest that exist[ed] which could affect [retained] counsel's representation of [Mr. Ross].'" *Id.* at ¶ 9.

{¶25} With respect to counsel's prior representation of a potential witness, this Court specifically recognized that "if the first victim's mother testified in this matter, retained counsel would be placed in the position of cross-examining her despite her status as a former client." *Id.* at ¶ 10. While Mr. Ross argued that there was only "'a minor risk'" that the state's concerns would impede retained counsel in the performance of his duties, this Court found that the record did not support this position. *Id.* at ¶ 10. In affirming the trial court's ruling, this Court concluded in *Ross* that "[t]he trial court, acting in its sound discretion, reasonably could have concluded that there was a serious potential for conflict if retained counsel continued to represent Mr. Ross." *Id.* at ¶ 11. The trial court did not have to wait for the conflict to arise at trial. Disqualification was affirmed as, based on the record, the trial court could have reasonably concluded that there was a serious potential for conflict.

{¶26} Having reviewed the record, this Court cannot conclude that the trial court abused its discretion when it granted the State's motion to disqualify. It is undisputed that Attorney Gedrock previously represented J.W., who is now a witness for the State. Attorney Gedrock represented at oral argument that his prior representation of J.W. was limited. However, this representation was not on the record before the trial court. It is well established that "[a]n appellate court's review is limited to the record presented before it." *State v. Miller*, 9th Dist. Summit No.

23240, 2007-Ohio-370, ¶ 13, citing *State v. Sugalski*, 9th Dist. Medina No. 02CA0054-M, 2002-Ohio-6767, ¶ 11.

{¶27} Based on the record that was before the trial court, Attorney Gedrock represented J.W. "for months and pled him guilty to a case." The State produced in discovery a purported 432 recorded jail calls, with most of the calls allegedly made by J.W. The disk also included phone calls made by Mr. Green on J.W.'s phone card. Letters from J.W. or J.W.'s girlfriend were also identified as trial exhibits.

{¶28} Even if Attorney Gedrock's prior representation was not an immediate cause for concern, the trial court reasonably could have concluded that there was a serious potential for conflict as Attorney Gedrock's duties to Mr. Green would be materially limited by the duties he owed to his former client. *See* Prof.Cond.R. 1.7(a)(2), 1.9(c)(1)-(2); *Wheat*, 486 U.S. at 164*; Ross*, 9th Dist. Lorain No. 17CA011220, 2018-Ohio-3524, ¶ 11. Mr. Green acknowledged in Exhibit B that "there is a substantial risk that Attorney Gedrock's ability to consider, recommend or carry out the appropriate course of action for my case may be comprised" in light of Attorney Gedrock's prior representation of J.W. Attorney Gedrock acknowledged at the oral hearing that he prepared Exhibit B to address "the possible complications, ramifications, [and] negative aspects" of his prior representation of J.W. Attorney Russo counseled J.W. and explained to him that "what Mr. Gedrock knows about [you] could be used against [you] as a witness in [your] testimony through cross-examination, any dirty little secret, any little thing that could make [you] - - prove [you] to be a liar."

{¶29} There was a concern that, if any pertinent, privileged information came to light during J.W.'s cross-examination, Attorney Gedrock would be prohibited from revealing or using that information, even if it would benefit Mr. Green. *See* Prof.Cond.R. 1.7(a)(2), 1.9(c)(1)-(2).

Even if it did not find an actual conflict, the trial court, acting in its sound discretion, reasonably could have concluded that there was a serious potential for conflict if Attorney Gedrock continued to represent Mr. Green. *See Id.*

{¶30} We conclude that the trial court did not abuse its discretion and did not violate Mr. Green's constitutional rights when it disqualified Attorney Gedrock as defense counsel for Mr. Green. Mr. Green's assignments of error are overruled.

## III.

{¶31} This Court overrules Mr. Green's assignments of error. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

HENSAL, P. J.
CONCURS.

FLAGG LANZINGER, J.
DISSENTING.

{¶32} I respectfully dissent from the majority opinion. As the majority acknowledges, a defendant has a fundamental right to choose his counsel such that the removal of one's chosen counsel is immediately appealable. *State v. Ross*, 9th Dist. Lorain No. 17CA011220, 2018-Ohio-3524, ¶ 5 ("[B]ecause the right to one's choice of counsel is fundamental, a pretrial ruling that removes one's retained counsel of choice is immediately appealable."). If, like here, a defendant has the ability to retain a qualified attorney, the Sixth Amendment generally protects his choice of counsel. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 625 (1989).

{¶33} While a defendant has no right to an attorney with a conflict of interest, only "an actual conflict [or] 'a showing of a serious potential for conflict' [will] justify a trial court's removal of a defendant's counsel of choice." *Ross* at ¶ 6, quoting *Wheat v. United States*, 486 U.S. 153, 164 (1988). The possibility that a conflict may exist only justifies an inquiry into the potential conflict, not the removal of counsel. *State v. Gillard*, 78 Ohio St.3d 548, 552 (1997).

{¶34} Both Mr. Green and J.W. signed written waivers, acknowledging Attorney Gedrock's former representation of J.W. in an unrelated case. Under the facts of this case, I would hold that the trial court abused its discretion by removing Attorney Gedrock–Mr. Green's chosen

counsel–from the case despite these waivers. Apart from its speculative arguments that the possibility for conflict existed, the State failed to present any concrete evidence to demonstrate that an actual conflict or a "serious potential" for conflict existed. *See Wheat* at 164. Additionally, while the majority relies upon this Court's prior decision in *Ross*, that case is readily distinguishable because neither the defendant nor the former client/potential witness in *Ross* signed a written waiver. Accordingly, I respectfully dissent from the majority opinion.

APPEARANCES:

DAVID V. GEDROCK, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE ZARANEC, Assistant Prosecuting Attorney, for Appellee.